NOT DESIGNATED FOR PUBLICATION

No. 112,159

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW CAMPBELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Greenwood District Court; CHARLES M. HART, judge. Opinion filed September 18, 2015. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Joe E. Lee*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and WILLIAM R. MOTT, District Judge, assigned.

*Per Curiam*:  Matthew Campbell appeals his convictions for burglary of a dwelling in violation of K.S.A. 2012 Supp. 21-5807(a)(1), and attempted theft in violation of K.S.A. 2012 Supp. 21-5301 and K.S.A. 2012 Supp. 21-5801(a)(1). Campbell challenges the oath used to swear the jury and the sufficiency of the evidence used to convict him of burglary. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Becky Schaffer lived in a mobile home under a pole barn. When a fire damaged the mobile home, William Jeff Koenig helped remove the pole barn and did other work for Schaffer. In return, Koenig gained possession of the damaged mobile home as compensation for his work. When asked at trial who held title to the mobile home, Koenig answered: "Well, I would say that insurance paid it off to [Schaffer] after it burnt down, and they was givin' it away as knowin' that I would probably make a living quarters out of it."

Koenig lived with his wife and two children in a house on 25 acres of land adjacent to Eureka. As viewed from the road, beside the house was a barn, and between the house and barn was a large overhead yard light. The barn was either "100 feet" or "100 yards" from the house and 35 to 40 feet from the road. Koenig towed the mobile home to his property and set it facing the road next to the side of the barn.

Koenig placed the mobile home on blocks. It had two doors, one facing the road and one facing the barn. The door facing the barn apparently had steps leading to it. Koenig did not work on the mobile home for more than a year. It was not connected to utilities, and it was still filled with Schaeffer's smoke-damaged property. Koenig testified that his plan was to "try to remodel it and help my—one of my kids have a place to be on my property."

At about 9 p.m. on April 29, 2013, Koenig's wife asked him to check the mobile home. Koenig noticed the door facing the road was slightly ajar. He looked inside and saw Campbell in the doorway of a bedroom. Campbell was dressed in dark clothing and was later found to have a small flashlight in his pocket. A dresser drawer near where Campbell had been standing was open, and Koenig said it appeared that someone had rifled through the drawer's contents. Campbell was arrested at the scene.

At trial, Campbell testified on his own behalf. He said he often went for walks and had walked by the mobile home several times before. Campbell said he was curious about the fire damage and had entered the mobile home to "have a look and see what had happened." "I was just lookin' around. That's all," he testified.

Based on these statements, the State offered and the trial court admitted Campbell's prior convictions for burglary with intent to commit theft. The trial court instructed the jury to consider the prior convictions, "solely for the purpose of proving the defendant's intent." After proof of the prior convictions was admitted, Campbell testified that in one of them he had "[o]riginally" entered the building in question "just to look around" but that he had then taken items from inside it.

When the jury was sworn at trial, the clerk used the following oath: "Each of you do solemnly swear that you will conscientiously try the cause and a true verdict render according to the law and evidence, so help you God." Campbell's counsel did not object to this oath.

At the conclusion of the evidence, the district court instructed the jury in part, with regard to the burglary charge, to find whether Campbell had "entered a dwelling," with dwelling defined as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." The jury found Campbell guilty of burglary of a dwelling and attempted theft. Campbell appeals.

WAS CAMPBELL DENIED A FAIR TRIAL BECAUSE THE JURORS' OATH WAS COERCIVE?

For the first time on appeal, Campbell contends he was denied a fair trial by the "coercive" jury oath. Campbell challenges the phrase "'a true verdict render,'" which he argues "obligates a jury in a criminal case to return a verdict." The State complains that

Campbell did not raise this issue in the district court. Whether Campbell was denied a fair trial is a question of law subject to unlimited review. See *State v. Smith-Parker*, 301 Kan. 132, 165, 340 P.3d 485 (2014).

Recently, our court considered this legal issue in a very similar case, *State v. Dwigans*, 51 Kan. App. 2d __, ___ P.3d __ (2015). In *Dwigans*, our court reiterated the general rule that "constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review." 51 Kan. App. 2d __, Syl. ¶ 1. Of particular importance to the issue raised by Campbell in this appeal, however, our court also held that a "[d]efendant must object at trial to the oath or affirmation given to the jury at a criminal trial in order to preserve for appeal any challenge to the form or administration of the oath or affirmation." 51 Kan. App. 2d __, Syl. ¶ 2.

It is uncontroverted that Campbell's counsel did not object to the oath the trial court administered to the jurors at the commencement of the trial. Given this fact, we find *Dwigans* controls the disposition of this issue. Because Campbell did not properly preserve this issue for appellate review, we decline to consider it.

WAS THE EVIDENCE SUFFICIENT TO CONVICT CAMPBELL OF BURGLARY OF A DWELLING?

Campbell contends Koenig did not intend to use the mobile home as a dwelling "in its condition." In context, Campbell argues that Koenig's failure to use the mobile home as a dwelling and his inattention to the remodeling project ruled out a residential burglary.

Our standard of review:

"The standard of review that applies when sufficiency of the evidence is challenged in a criminal case is well known. After reviewing all the evidence in a light

4

most favorable to the prosecution, the appellate court must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. [Citation omitted.]" *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

If the definition of a dwelling is met, the crime is a person felony. See K.S.A. 2012 Supp. 21-5807(a)(2). Campbell points out, however, that the crime is a nonperson felony if the definition does not apply, *i.e.*, if the "mobile home . . . is not a dwelling." K.S.A. 2012 Supp. 21-5807(a)(2). From this, Campbell correctly infers, "there are situations in which a . . . mobile home is not a dwelling."

The jury was instructed according to K.S.A. 2012 Supp. 21-5111(k), which defined dwelling as "a building, or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." Clearly the mobile home was not "used" as a human habitation, home, or residence when Campbell made his entry. That leaves the phrase "intended for use," and the definition does not identify the subject whose intent controls the intended use.

The phrase "intended for use," does not necessarily have as its subject the manufacturer of a mobile home. We are persuaded that the intent of the owner or possessor of the mobile home is of primary importance. If the owner or possessor intends for the mobile home to be used for some other purpose than as a human habitation, home, or residence, it would not be a dwelling under the statutory definition despite the purpose for which it is typically manufactured. Compare *State v. Schultz*, 22 Kan. App. 2d 60, 63, 911 P.2d 1119 (1996) ("[N]ormally a gas station would not be considered a 'dwelling' as contemplated by our legislature absent some proof that the gas station either is used or intended for use as a human habitation, home, or residence.").

5

Here, the mobile home was previously owned, or at least possessed, by Schaffer. She used it as a human habitation, home, or residence, but Campbell entered it more than a year after she relinquished possession to Koenig, and both Campbell and the State appropriately focus on his intended use.

Several facts support the jury's verdict that Campbell committed a burglary of a dwelling. First, Koenig testified to an actual intent to use the mobile home as a human habitation, home, or residence. While Koenig was not implementing his intent when Campbell entered the mobile home, Koenig still intended such use. While it is possible to imagine a passage of time so great that such an intent might become attenuated, in the present case, only about a year had passed since Koenig had obtained possession of the mobile home. See *Herrick v. State*, 25 Kan. App. 2d 472, 477-78, 965 P.2d 844, *rev. denied* 266 Kan. 1108 (1998) (citing an Illinois case where a house was not a residence where it had not been occupied for over 7 years, "and there was no expectation that the house would be occupied").

Second, Koenig had taken steps towards implementing his intent to use the mobile home as a human habitation, home, or residence. He moved the mobile home onto his land, near his residence, and placed it on blocks. One door had steps leading up to it. It was parked near a yard light, and he and his wife kept a watchful eye on it.

Third, Koenig was not using, nor did he testify to an intent to use, the mobile home for a purpose *other than* as a human habitation, home, or residence. For example, Koenig had not used it as a storage unit or as a workspace.

Finally, Koenig's intent was not improbable. Koenig testified the mobile home's shell was intact, the fire damage was confined to one bedroom, and the rest of the unit had suffered only smoke damage. Evidence that Campbell entered the mobile home and rifled through a drawer also supports an inference that the structure appeared sufficiently

sound to hold something of value. See 25 Kan. App. 2d at 479 (A building was a dwelling where, in part, it did not "appear that it was so dilapidated as to raise the issue of whether it could be used as a human habitation.").

We conclude by observing that "[t]he definition of dwelling used in the Kansas burglary statute is particularly broad." 25 Kan. App. 2d at 478. Thus, "the building does not have to be presently used as a human habitation, home, or residence for it to be considered a dwelling." 25 Kan. App. 2d at 478. Considering the trial evidence collectively, in a light most favorable to the prosecution, we are convinced a rational factfinder could have found that Koenig intended to use the mobile home as a human habitation, home, or residence and, therefore, found him guilty of burglary of a dwelling beyond a reasonable doubt.

Affirmed.